**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS J. FLEMINGS,** | ) | |
| Petitioner, | ) | **Civil Action No. 13-48 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **PENNSYLVANIA BOARD OF** | ) | |
| **PROBATION AND PAROLE, et al.,** | ) | |
| Respondents. | ) | |

## OPINION AND ORDER[1]

Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner Thomas J. Flemings. [ECF No. 5]. He claims that his state sentences were illegally aggregated in 2002. According to him, his maximum sentence expired in December of 2010 and, therefore, his present confinement is in violation of his federal constitutional rights. For the reasons set forth below, the petition is dismissed with prejudice because Petitioner's claim is both untimely and procedurally defaulted. Also, a certificate of appealability is denied.

## I.

### A.    Relevant Background

In April of 1980, Petitioner robbed a grocery store in Erie at gunpoint and stole $2,000.00 in cash from the register. Approximately one week later, on April 17, 1980, Petitioner entered another grocery store in Erie, pointed a handgun at a clerk, and told her to shut up or he would kill her. He then reached into the store register and stole $420.00. [See ECF No. 21 at 1].

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

Petitioner was tried and convicted in the Court of Common Pleas of Erie County for the crimes he committed during each incident. At Criminal Action No. 813 of 1980, he was found guilty of the offenses of robbery and firearms violations. On February 26, 1982, the Honorable James B. Dwyer sentenced him in that case to a total term of 10-20 years' incarceration. [Resp's Ex. A, ECF No. 21-1 at 2-3]. At Criminal Action No. 757 of 1980, Petitioner was found guilty of robbery. On May 17, 1982, the Honorable Richard L. Nygaard, who at the time was a judge in the Court of Common Pleas, sentenced him in that case to a total term of 10-20 years' incarceration "to run CONSECUTIVELY to the sentence imposed by Judge Dwyer, February 26, 1982 on Case No. 813 of 1980." [Resp's Ex. B, ECF No. 21-1 at 5].

The Department of Corrections (the "DOC") calculated the 10-20 year sentence imposed upon Petitioner by Judge Dwyer at Criminal Action No. 813 of 1980 to have a minimum date of April 27, 1991, and a maximum date of April 27, 2001. [ECF No. 21, ¶ 6. See also Resp's Ex. D, ECF No. 21-1 at 9]. Petitioner was given the DOC institution number of AP-5852. In June of 1991, the Pennsylvania Board of Probation and Parole (the "Board"), released Petitioner on constructive parole to the detainer sentence ordered by Judge Nygaard and he was assigned the DOC institution number BN-4594. [Resp's Ex. D, ECF No. 21-1 at 9].

Approximately ten years later, in July of 2001, the Board released Petitioner on parole to an approved home plan. [Resp's Exs. E, F & G, ECF No. 21-1 at 10-16]. Less than a year later, in June 21, 2002, the Board issued a decision in which it recommitted him as a technical parole violator to serve 10 months of backtime.[2] On this decision, the Board recorded Petitioner's parole violation maximum date as June 20, 2011. [Resp's Ex. H, ECF No. 21-1 at 18].

---

[2] Petitioner's technical parole violations were for consumption of alcohol and failure to refrain from entering establishments that sell or dispense alcohol. [Resp's Ex. H, ECF No. 21-1 at 18].

Sometime thereafter in 2002, the DOC restructured Petitioner's sentence to reflect that his minimum parole violator sentence date was April 28, 2001, and his maximum date was April 28, 2021. In a Form DC-16E "Sentence Status Summary," it was explained why this action was taken:

> [Criminal Action No. 757 of 1980] was originally lodged as a detainer under [DOC institution number AP-5852] to reenter under a new [DOC institution number.] On 6/24/91 [Petitioner was] paroled from AP-5852 to serve the 10-20Y [sentence imposed at Criminal Action No. 757 of 1980] under [DOC institution number] BN-4594. We are now aggregating both of the 10-20Y sentences to reflect a total sentence of 20-40Y to be served under this [DOC institution number]. All previous Board actions will be rescinded.

[Resp's Ex. J, ECF No. 21-1 at 23].

In a related action, on December 12, 2002, the Board issued a decision in which it rescinded and modified its earlier actions "due to sentence restructure by the Department of Corrections." The Board informed Petitioner in that decision that it was changing his DOC institution number back to AP-5852 and that his parole violation maximum date was April 28, 2021. [Resp's Ex. I, ECF No. 21-1 at 21].

Approximately eight months later, on or around August 18, 2003, the Board released Petitioner on reparole to an approved home plan. [Resp's Ex. K, ECF No. 21-1 at 25]. He violated the terms of his parole, and on March 16, 2004, the Board issued a decision in which it recommitted him as a technical parole violator to serve 18 months of backtime. [Resp's Ex. L, ECF No. 21-1 at 27]. A little less than a year later, on February 3, 2005, the Board issued a decision in which it recommitted Petitioner as a convicted parole violator to serve 12 months concurrently for a total of 18 months of backtime for committing the offense of Theft by Unlawful Taking while on parole. As a result of all of this, Petitioner's parole violation maximum date was recalculated to be April 9, 2023. [Resp's Ex. M, ECF No. 21-1 at 27-30].

On February 23, 2005, the Board received a petition for administrative review from Petitioner in which he, among other things, challenged the 2002 recalculation of his sentence. He wrote:

The Board erred in determining petitioner's maximum parole expiration date to be April 9, 2023. Petitioner served his entire sentence under Docket Number 813 of 1980 (Inst. No. AP-5852). Said sentence expired legally in June of 2001. Petitioner was paroled from No. AP-5852 in June of 1991 and commenced to serve a consecutive detainer sentence under No. 757 of 1980 (Inst. No. BN-4594). The Board erred whereas, the Board cannot rescind an expired term of constructive parole which had expired.

[Resp's Ex. O, ECF No. 21-1 at 39]. On February 25, 2005, the Board received another administrative appeal from Petitioner, in which he wrote:

In February of 1982 I was sentenced to a 10 to 20 year prison term . . . This sentence was under Docket 813 of 1980…. In March of 1982 I was transferred to S.C.I. Pittsburgh and was assigned institutional number AP-5852 and a[n] institutional status computation established my minimum date to be April 28, 1991.

On February 6, 1991 the Board of Probation and Parole granted me "Constructive Parole," which is invested in their power by the State Legislators. In June of 1991 I signed all the necessary parole papers and was given a new institutional number (BN-4594). The aforementioned number was for Docket Number 757 of 1980. At that time I was given a new institutional status computation establishing my minimum date to be June 22, 2001.

On June 5, 2001 the Board of Probation and Parole granted me parole. Subsequently, in May of 2002 I was returned to S.C.I. Albion as a technical parole violator. At this point my sentence under 813 of 1980, institutional number AP-5852 had expired eleven (11) months earlier. The sentence under 813 of 1980 expired on June 22, 2001. However, according to the erroneous computation by the Records Office at S.C.I. Albion my maximum date is set at April 28, 2006. My sentences for 813 were to run concurrent…. Therefore the Board erroneously recalculated a sentence that had long expired.

In conclusion I am requesting that your Office correct the mistakes that are clearly established by the records.

[Resp's Ex. O, ECF No. 21-1 at 34].

On March 14, 2005, the Board denied the petitions for administrative review. [Resp's Ex. P, ECF No. 21-1 at 42]. Petitioner filed an appeal with the Commonwealth Court of Pennsylvania.

On December 7, 2005, the Commonwealth Court issued a decision in which it affirmed the Board's March 14, 2005, decision. It held, in relevant part:

4

[Petitioner] contends that the Board improperly calculated his maximum term expiry by aggregating the consecutive 1982 robbery sentences because he had already completed the first sentence by way of "constructive" parole.

- - -

[Petitioner] argues that the Board was not authorized to recalculate his maximum term expiry based on an aggregation of his consecutive 1982 robbery sentences. We disagree.

Under Section 9757 of the of the Sentencing Code,[6] aggregation of consecutive sentences is automatic and mandatory once the latter sentence is imposed; it is not a discretionary matter for the sentencing court. Gillespie v. Dep't of Corrections, 527 A.2d 1061 (Pa.Cmwlth. 1987). See also Nickson v. Pennsylvania Bd. of Probation and Parole, 880 A.2d 21 (Pa.Cmwlth. 2005) (once a sentencing court imposes a consecutive sentence, aggregation is mandatory). Moreover, pursuant to Section 21(a) of the law commonly referred to as the Parole Act, the Board is without authority to grant parole prior to a sentence minimum date. Nickson.

[6] 42 Pa.C.S. § 9757 (consecutive sentences of total confinement for multiple offenses), which provides as follows:

> Whenever the court determines that a sentence should be served consecutively to one being then imposed by the court, or to one previously imposed, the court shall indicate the minimum sentence to be served for the total of all offenses with respect to which sentence is imposed. Such minimum sentence shall not exceed one-half of the maximum sentence imposed.

Here, by operation of statute, [Petitioner's] sentences were automatically aggregated as of May 17, 1982 when the trial court imposed the second consecutive 10 to 20 year robbery sentence. Consequently, [Petitioner] was not eligible for parole until April 28, 2001, when his aggregated minimum term of 20 years expired. Gillespie. We believe the Board did not err when it modified all prior orders to reflect the correct aggregate minimum term expiry dates of April 28, 2001 and April 23, 2021, respectively.

[Petitioner] also claims that the Board denied him 10 years of "constructive" parole time. When he was paroled to the detainer sentence on June 20, 1991, [Petitioner] reasons that he began to serve not only the beginning of his second 10 to 20 year robbery sentence but also constructively continued to serve the final 10 years of his 20 year maximum for his first robbery sentence. Thus, he concludes that he had completed the maximum term of his first robbery sentence and served 10 years of his second robbery sentence before he was recommitted as a TPV on June 12, 2002. Relying on this theory of "constructive" parole, Flemings argues that only the remaining 10 years of his second robbery sentence was subject to backtime.

> Contrary to [Petitioner's] assertions, when consecutive sentences are aggregated, the unexpired maximum of the first sentence does not run concurrently with the minimum of the second sentence. <u>Bowman v. Pennsylvania Bd. of Probation and Parole</u>, 709 A.2d 945 (Pa.Cmwlth. 1998). As [Petitioner] acknowledges, the entire concept of "constructive" parole has been effectively eliminated by the Supreme Court. <u>Id.</u> at 947 n.3 (citing <u>Commonwealth v. Tilghman</u>, 543 Pa. 578, 673 A.2d 898 (1996)).

[Resp's Ex. R, <u>Flemings v. Pennsylvania Bd. of Prob. and Parole</u>, No. 769 C.D. 2005, slip op. at 3-6 (Pa.Cmwlth. Dec. 7, 2005), ECF No. 21-1 at 51-54].

Petitioner did not file a petition for allowance of appeal (a "PAA") with the Pennsylvania Supreme Court following the Commonwealth Court's decision.

On August 1, 2006, the Board reparoled Petitioner to a home plan in Los Angeles, California. [Resp's Ex. S, ECF No. 21-1 at 57-58]. Almost six years later, on May 29, 2012, the Board recommitted him as a technical parole violator for violating a condition of his parole that prohibited the consumption of alcohol. [Resp's Ex. T, ECF No. 21-1 at 60-61]. He administratively appealed the Board's decision, stating that he "only drank a couple of sips of beer." [Resp's Ex. U, ECF No. 21-1 at 63]. The Board recently affirmed its decision to recommit him. [Resp's Ex. V, ECF No. 21-1 at 66-71].

In February of 2013, Petitioner commenced this habeas case. This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner contends that he is being "illegally incarcerated":

> [I am] being confined passed my maximum sentencing date. In 1980 [sic] I was sentenced to 10 to 20 years imprisonment and then in February of 1981 [sic] I was sentenced to a consecutive 10 to 20 years of imprisonment. My entire sentence expired in 2010. But I am still in jail … in violation of Federal law. My maximum sentence expired in 2010.

[ECF No. 5 at 5, 10]. As relief, he requests that this Court issue an order directing that he be released immediately.[3] [ECF No. 5 at 15].

On May 30, 2013, the Board filed an Answer on behalf of all of the Respondents. [ECF No. 21]. It argues that although Petitioner's claim is wholly without merit for the reasons set forth by the Commonwealth Court in its December 7, 2005, decision, this Court must dismiss it as untimely under AEDPA's statute of limitations and because Petitioner failed to exhaust it.

Petitioner filed a Reply in which he reiterates that his "sentences were illegally aggregated" in 2002. [ECF No. 24 at 1. See also ECF No. 25]. He did not address the Respondents' arguments that his claim is untimely and that he is barred from federal habeas relief because he failed to exhaust it.

**B.    Discussion**

State prisoners seeking habeas relief must satisfy specific procedural standards. Among these procedural prerequisites is a requirement, enacted by AEDPA, that petitioners timely file petitions seeking habeas corpus relief. AEDPA provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[3]      Petitioner also seeks the following money damages: (1) $3,000.00 for each day that he has been held in custody beyond his alleged December 2010 maximum date; (2) $300,000.00 dollars from the Superintendent of SCI Albion; and, (3) $100,000.00 from his Unit Managers and team counselor. [ECF No. 5 at 15]. Money damages are not available in a habeas corpus action.  See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 494 (1973) (explaining that "if a state prisoner is seeking damages, he is attacking something other than immediate or more speedy release – the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy."); Marine v. Quintana, 347 F.App'x 736 (3d Cir. 2009) (affirming that money damages are not available in a habeas action).

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)-(2).

Respondents contend that AEDPA's one-year-limitations period in this case began to run under § 2244(d)(1)(D) in December of 2002, when the Board notified Petitioner that it had restructured his sentence to reflect his total aggregate sentence of 20 to 40 years, and no later than early January of 2006, after the Commonwealth Court denied his claim that the Board had erred and he opted not to seek further review with the Pennsylvania Supreme Court. The precise date that AEDPA's limitations period began to run in this case is not critical, however, because there can be no dispute that Petitioner's claim is untimely. The record establishes that in 2002 he was advised about the actions that provide the basis of his claim and by December of 2005 he was advised that the Commonwealth Court had affirmed the Board's challenged action. Petitioner did not commence this proceeding until February of 2013. Therefore, his claim is untimely by at least six years, if not many more.[4]

Respondents also are correct that Petitioner's claim must be denied because he failed to exhaust it. The U.S. Court of Appeals for the Third Circuit has explained, "[i]t is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the

---

[4]       The U.S. Supreme Court has held that AEDPA's statute-of-limitations period "is subject to equitable tolling in appropriate cases." Holland v. Florida, — U.S. — , 130 S.Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Id. at 2562. See also Munchinski v. Wilson, 694 F.3d 308, 329-32 (3d Cir. 2012). "This conjunctive standard requires showing *both* elements before we will permit tolling." Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original). Petitioner does not argue that equitable tolling applies to this case, and there is nothing in the record that would indicate that the application of it would be appropriate here.

remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). Specifically, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). The petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert, 134 F.3d at 513.

This exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan, 526 U.S at 842-49. The requirement is:

> principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted).

To properly exhaust a federal constitutional claim regarding the Board's actions, a Pennsylvania prisoner must first seek administrative review with the Board itself. If the Board denies the prisoner's administrative appeal, he then must seek review in the Commonwealth Court. 42 Pa.C.S. § 763(a). Petitioner initially did not challenge the Board's December 12, 2002, action. However, in February of

2005, he raised the issue in his administrative challenge to the Board, and then again when he appealed to the Commonwealth Court. Because the Commonwealth Court considered the claim, this Court shall conclude that Petitioner satisfied the first two steps required for exhaustion.

However, once the Commonwealth Court denied Petitioner relief, he was required to seek review in the Pennsylvania Supreme Court before he could raise his claim in a federal habeas petition. See Williams v. Wynder, 232 F.App'x 177, 180 (3d Cir. 2007) (concluding that the Pennsylvania Supreme Court's Order 218 does not apply to decisions issued by the Commonwealth Court and that "the District Court correctly held that [petitioner] was required to exhaust his available state remedies by filing a petition for allowance of appeal in the Pennsylvania Supreme Court"). Petitioner did not pursue this last required step. Because he did not, this Court must conclude that Petitioner did not exhaust his federal habeas claim in state court. As a result, his claim is procedurally defaulted for the purposes of federal habeas review. See, e.g., Lines v. Larkins, 208 F.3d 153, 16069 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.[5]

---

[5] A petitioner whose habeas claim is procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." See, e.g., Coleman, 501 U.S. at 750; Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012); Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner does not argue that he can overcome the default of his claim, and there is nothing in the record that would indicate that he could establish cause for his default or prejudice stemming therefrom.

In conclusion, for the reasons set forth above, the petition for a writ of habeas corpus is dismissed with prejudice because Petitioner's claim is untimely and because he failed to exhaust it and, as a result, procedurally defaulted it.

**C.**     **Certificate of Appealability**

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying this standard here, jurists of reason would not find it debatable whether the instant petition should be dismissed. Accordingly, a certificate of appealability shall be denied.

**II.**

For the reasons set forth above, the petition for a writ of habeas corpus is dismissed with prejudice. Also, a certificate of appealability is denied. An appropriate Order follows.


                                        /s/ Susan Paradise Baxter
Dated: July 24, 2013                    SUSAN PARADISE BAXTER
                                        United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS J. FLEMINGS, )
      Petitioner, )     **Civil Action No. 13-48 Erie**
       )
**v.** )
       )     **Magistrate Judge Susan Paradise Baxter**
PENNSYLVANIA BOARD OF )
PROBATION AND PAROLE, <u>et al.</u>, )
      Respondents. )

## <u>ORDER</u>

AND NOW, this 24th day of July, 2013;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DISMISSED WITH PREJUDICE, and a certificate of appealability is DENIED. The Clerk of Courts is directed to close this case.


<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge